IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **EIONSHAFAE EVANS**, individually, and on behalf of all others similarly situated, | : : : : : | CIVIL ACTION NO.: _____ |
| Plaintiffs, | : : | |
| v. | : : | |
| **SAVISTA, LLC**, | : : | |
| Defendant. | : : | |

**COLLECTIVE AND CLASS ACTION
COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Eionshafae Evans, individually and on behalf of all others similarly situated ("Plaintiff"), by and through her undersigned attorneys, hereby brings this Collective/Class Action Complaint against Defendant, Savista, LLC ("Defendant"), and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This action arises out of Defendant's systemic failure to compensate its employees for all hours worked, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2.      According to its website, Defendant is "a full-service healthcare revenue cycle company" that has been "delivering industry-leading revenue cycle

1

management services" that improve their clients' operation and financial outcomes.[1] It partners with over 330 hospitals, systems and physician practices at over 770 facilities across 49 states.[2]

3.    Plaintiff and the putative collective members consist of current and former customer service representatives, or similar positions ("CSRs" or "Plaintiffs")[3], who were non-exempt employees compensated on an hourly basis.

4.    Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its CSRs for all pre-, mid-, and post-shift off-the-clock work.

5.    In particular, Defendant required its CSRs to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and clocking in to the timekeeper and the phone.

6.    The CSRs only clocked in and received compensation *after* this preliminary work was completed, though they were required to perform this work in order to be "phone ready" when their scheduled shifts began.

---

[1] https://www.savistarcm.com/ (last visited September 27, 2023).
[2] https://www.linkedin.com/company/savistarcm/about/  (last visited September 27, 2023).
[3] Defendant uses several job titles for is CSRs, including, but not limited to, Customer Service Representative, Patient Services Representative, and Medical Insurance Accounts Receivable Representative or AR Specialist.

7.     An Agent's failure to be "phone ready" when the scheduled shift began (or when the shift resumed after meal periods), could result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

8.     In addition to this pre-shift work, Defendant also required its CSRs to perform unpaid mid-shift work during their unpaid meal periods.  The CSRs' duties performed during their unpaid meal periods included similar login procedures. 29 C.F.R. § 785.19(a).

9.     The CSRs routinely worked 40 hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the CSRs, even those CSRs who were scheduled and paid for only 40 hours per week, actually worked over 40 hours per week without the required overtime premium for hours worked over 40 per week.

10.    Defendant, through its managers, had actual and constructive knowledge that its CSRs were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its CSRs to complete this unpaid work.

11.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent

in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."

12.    The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for CSRs/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." See *Id*., at p. 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

13.    Defendant's practice of failing to compensate its CSRs for all hours worked violated the CSRs' rights under the FLSA.

14.    Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly CSRs who worked for Defendant*
> *at any time during the past three years.*

15.    Defendant is liable for its failure to pay it CSRs for all work performed.

16.    CSRs who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre-, mid- and post-shift work performed for

Defendant, and an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

17.    At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

18.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

19.    This Court has diversity jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1332 because the named Plaintiff and Defendant reside in different states.

20.    Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

21.    Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's employees, including Plaintiff, engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

22.    This Court has jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members and Defendant are citizens of different states.

23.    A private party may also bring an action for damages for violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen Stat. §§95-25.1, *et seq*. Plaintiff's state claims originate from the same facts that form the basis of her federal claims. The court therefore has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

24.    This Court has personal and general jurisdiction over Defendant because it maintains its principal place of business in Georgia. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

25.    Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is headquartered and conducts business in this District and division.

26.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

27.    Plaintiff, Eionshafae Evans, is an adult resident of Oxford, North Carolina.  She worked for Defendant as an hourly call center agent in Defendant's Raleigh, North Carolina facility from November 2011 until the beginning of the COVID-19 pandemic. At that point, Evans began working remotely from her residence in North Carolina. Evans worked for Defendant until January 2022. Evans' consent to join form is attached as *Exhibit A*.

28.    On information and belief, additional putative Collective members were or are employed by Defendant as hourly call center CSRs in Georgia, North Carolina, Texas, and across the county remotely during the past three years and their consent forms will also be filed in this case.

29.    Defendant is a Delaware Limited Liability Company with its offices and principal place of business located in Alpharetta, Georgia.

30.     Defendant maintains a registered office in Georgia and its registered agent can be served as follows: LegalInc Corporate Services Inc, 1870 The Exchange SE, Suite 200-44, Atlanta, GA 30339.

## FACTUAL ALLEGATIONS

31.    Prior to hiring prospective CSRs, Defendant provided them with a written offer setting forth the job requirements and rate of pay.

7

32.    Defendant maintained documents demonstrating the promised hourly wage for each CSR including, but not limited to: offer letters, paystubs, and/or other payroll records.

33.    Plaintiff received an offer from Defendant to work as a CSR, and they accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

34.    Defendant has employed hundreds of call center CSRs over the past three years as part of its call centers' business lines to handle consumer and customer phone calls concerning various issues.

35.    Defendant typically scheduled its CSRs to work 8.5 hour shifts (or longer), five days per week, with a scheduled 30-minute unpaid meal period each shift.

36.    Defendant compensated its CSRs on an hourly basis and classified them as non-exempt employees under the FLSA.

37.    Throughout her employment with Defendant, Plaintiff was a full-time CSR, regularly working 40 hours per week remotely, and earning about $15 per hour.

38.    Throughout her employment with Defendant, Plaintiff's job duties included fielding inbound calls and performing a wide range of support services including documenting complaints, collecting payments and arranging payment plans for customers.

39.     Defendant provided training to hourly call center employees, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that Defendant provided to all of its CSRs was substantially, if not entirely, the same.

40.     At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, and assignments.

## Pre-Shift Work

41.     Like most call centers, Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its CSRs' job performance.

42.     Defendant uses its attendance/schedule adherence policies to pressure its CSRs into working early and off-the-clock so they can be "phone ready" at the start of their shifts.

43.     Throughout their employment with Defendant, Plaintiff and other CSRs were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

44.     Upon arriving at Defendant's call center (and/or upon arriving to their home computer), Defendant's CSRs were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous

software programs in order to access the necessary information to perform their work.

45.    The pre-shift boot-up and login process generally consisted of the following steps:

      a.    The CSRs turned on or woke up their computer;

      b.    After waiting for the computer to boot or wake up, the CSRs were prompted to login to Windows using the ctrl+alt+delete function, enter their username and password, and connect to Defendant's network;

      c.    After the CSRs were logged into Windows and connected to Defendant's network, they began the required process to open, enter their assigned login credentials, and access the necessary computer applications (*e.g.*, Cerner, EPIC, Collections Manager, Outlook (e-mails), Microsoft Teams, etc);

      d.    After the CSRs completed the required login process, they opened Defendant's timekeeping and phone software programs, entered their assigned login credentials, and clocked in for their shifts; and

      e.    The CSRs made themselves "available" on the softphone and began receiving phone calls at the moment their shifts began.

46.    The boot-up and login process described above took substantial time on a daily basis, ranging from 20-30 minutes per shift, or more, depending on how fast/slow the computers were operating.

47.    The CSRs also frequently encountered technical problems while performing this boot-up and login process which often caused the process to take longer than 20-30 minutes.

10

48.    Defendant's CSRs did not actually "clock in" for their shifts until the start of their scheduled shifts; meaning that Plaintiff and all other CSRs worked off-the-clock for at least 20-30 minutes (or more) before each shift for which they were never compensated.

49.    If CSRs arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

50.    Defendant tracked tardy attendance and unexcused absences as "occurrences" in its timekeeping software in furtherance of its schedule adherence policy and scoring.

51.    Because Defendant's CSRs typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

52.    Defendant had express and constructive knowledge that its CSRs began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "phone ready" and clocked in on time.

53.    Defendant also had express and constructive knowledge that its CSRs frequently experienced technical problems with their computers or phones during the boot-up and login process.

54.    Defendant's policies and practices discouraged its CSRs from recording all time worked.

55.    Despite having express and constructive knowledge of its CSRs' pre-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its CSRs. *Allen v. Board of Public Educ. For Bibb Cty.*, 495 F.3d 1306, 1321 (11th Cir. 2007).

### **Mid-Shift Work During Unpaid Meal Periods**

56.    Defendant provided its CSRs with a scheduled 30-minute unpaid meal period during each work shift.

57.    However, Defendant also required its CSRs to perform off-the-clock work during these unpaid meal periods, including returning from the 30-minute meal period approximately 5 minutes early in order to have enough time to log back in prior to resuming their shifts.  This process was similar to the pre-shift login process described above (albeit abbreviated), and this time also went unpaid.

58.    According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (***Exhibit B***, Fact Sheet #64 at p. 2).

12

59.     The mid-shift off-the-clock time worked by Defendant's CSRs directly benefitted Defendant and the process was an integral and indispensable part of the CSRs' job responsibilities.

60.     Because Defendant's CSRs typically worked scheduled shifts of at least 40 hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

61.     Defendant had express and constructive knowledge that its CSRs took unpaid meal periods and that its CSRs also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and clocked in on time for their shifts to resume.

62.     Despite having express and constructive knowledge of its CSRs' mid-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its CSRs. *Allen v. Board of Public Educ. For Bibb Cty.*, 495 F.3d 1306, 1321 (11th Cir. 2007).

**Post-Shift Work**

63.     Defendant trained and instructed CSRs to clock out the moment they finished fielding their last call of the shift. This pressured and required Defendant's CSRs, including Plaintiff, to also perform off-the-clock work at the end of their scheduled shifts when they logged out of the programs and applications and shut-down or restarted their computer.

64.    To meet job requirements, CSRs also frequently had to perform additional "catchall work" including returning customer calls and reading and responding to e-mails after they were clocked out at the end of their scheduled shifts.

65.    This resulted in Plaintiff and other CSRs performing an additional ten (10) to twenty (20) minutes every shift.

66.    The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

## FLSA COLLECTIVE ACTION ALLEGATIONS

67.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former hourly call center CSRs who worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "Collective").  Plaintiff reserves the right to amend this definition if necessary.

68.    Excluded from the Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

69.    At all relevant times, Defendant was an "employer" and Defendant directed and directly benefitted from the off-the-clock activities performed by its CSRs.

70.    At all relevant times, Defendant controlled its CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

71.    At all relevant times, Defendant was able to track the amount of time its CSRs spent booting up and logging into Defendant's computer network and software programs; however, Defendant failed to document, track, or pay its CSRs for the off-the-clock work they performed.

72.    At all relevant times, Defendant's policies and practices deprived its CSRs of overtime wages owed for the pre-, mid-, and post-shift activities they performed off-the-clock.

73.    With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).  The group of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

74.    The employment relationships between Defendant and every proposed Collective member are the same and may differ only by name, location, and rate of pay.  The key issue – the amount of uncompensated off-the-clock time owed to each employee – does not vary substantially among the proposed Collective members.

75.    The key legal issues are also the same for every proposed Collective member: (a) whether the 20-30 minutes (or more) of required pre-shift off-the-clock time amounted to compensable overtime under the FLSA; (b) whether the 5 minutes (or more) of required mid-shift off-the-clock time amounted to compensable overtime under the FLSA; (c) whether the 10-20 minutes (or more) of required post-shift off-the-clock time amounted to compensable time under the FLSA ; and (d) whether Defendant fulfilled its recordkeeping obligations under the FLSA.

76.    Plaintiff estimates that the proposed Collective, including both current and former CSRs over the relevant period, may include hundreds of current and former employees.  The precise number of CSRs should be readily available from a review of Defendant's personnel and payroll records.

77.    Pursuit of this action on a collective basis will provide the most efficient mechanism for adjudicating the claims of Plaintiff and the proposed Collective members.

78.    Accordingly, the Court should conditionally certify the proposed Collective for purposes of authorizing a written notice regarding the pendency of

this collective action to be sent to the proposed Collective members so they can learn about this action and exercise their right to opt-in, if they so desire.

79.    Plaintiff should be permitted to serve as representative of those who consent to participate in this collective action.

## **RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS**

80.    Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All current and former hourly home-based customer service representatives who worked in North Carolina for Defendant at any time during the last three years.*

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff reserves the right to amend this definition if necessary.

81.    The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical. Plaintiff reasonably estimates that there are hundreds of Rule 23 North Carolina Class members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

82.    There is a well-defined community of interest among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North

Carolina Class.  These common legal and factual questions, include, but are not limited to, the following:

    a.  Whether the pre-shift time Rule 23 North Carolina Class members spend on start-up and log- in activities each session is compensable time;

    b.  Whether the mid-shift time Rule 23 North Carolina Class members spend on connectivity issues is compensable time;

    c.  Whether the time Rule 23 North Carolina Class members spend on boot-up and login activities during their lunch break is compensable time;

    d.  Whether the post-shift time Rule 23 North Carolina Class members spend on log-out activities is compensable time;

    e.  Whether Rule 23 North Carolina Class members are owed wages (above the federally mandated minimum wage and overtime due under the FLSA) for time spent performing preliminary, mid-shift or post-shift activities, and if so, the appropriate amount thereof; and

    f.  Whether Defendants' non-payment of wages amount to a breach of contract.

83.    Plaintiff's, claims are typical of those of the Rule 23 North Carolina Class in that she and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's, claims arise from the same  policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

84.    Plaintiff will fully and adequately protect the interests of the Rule 23 North Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

85.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

86.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

87.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates

a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

88.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

89.    Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All current and former hourly call center CSRs who worked for Defendant in the United States at any time during the past three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

90.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates that there are over 500 Rule 23 Nationwide Class members. The precise number of Rule 23 Nationwide Class members should be readily available from a review of Defendant's personnel and payroll records.

91.    There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in

this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

     a. Whether the pre-shift time that Rule 23 Nationwide Class members spend on boot-up/login activities prior to "clocking in" for each shift is compensable time;

     b. Whether the time that Rule 23 Nationwide Class members spend on work activities during their unpaid meal periods, such as logging back into computer systems and clocking in is compensable time;

     c. Whether the time that Rule 23 Nationwide Class members spend on work activities after they are required to clock out, such as returning client calls and catching up on e-mails is compensable time;

     d. Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre- and mid-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

92. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

93.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and they have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

94.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

95.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

96.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a

categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

97.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. – FAILURE TO PAY OVERTIME

98.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

99.    At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

100.    Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

101.    At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

102.    Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

103.    Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

104.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

105.    At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly perform 20-30 minutes or more of pre-shift computer boot-up and login time per shift, and 5 minutes or more mid-shift, and 10-20 minutes or more post-shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

106.    All of the off-the-clock worked performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

107.    In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

108.    In workweeks where Plaintiff and the proposed Collective members worked 40 hours or more, the uncompensated pre- and  mid-shift off-the-clock work

should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay.  29 U.S.C. § 207.

109.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its CSRs to complete the pre-shift boot-up and log-in process, the mid-shift login process, and the post-shift catchall work, and Defendant could have properly compensated Plaintiff and the proposed Collective members for the boot-up, login, and housekeeping work they performed, but did not.

110.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 211, *et seq*., FAILURE TO MAINTAIN REQUIRED RECORDS**

111.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

112.    The FLSA requires all employers to keep all payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees).  See 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

113.   As an employer, Defendant is subject to the FLSA's recordkeeping requirements.

114.   Defendant's obligations were to maintain and preserve payroll or other records containing, without limitation, the total hours actually worked by each employee each workday and total hours worked by each employee each workweek. 29 C.F.R § 516.2.

115.   Upon information and belief, Defendant maintained corporate policies and/or practices of evading pay for its non-exempt employees by failing to track, and maintain records of, their actual work time.

116.   Defendant failed to maintain and preserve accurate timesheets and payroll records in connection with it CSRs' employment as required by 29 C.F.R § 516.2.

117.   When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

118.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

119.    As a result of Defendant's recordkeeping violations, Plaintiff seeks a declaratory judgment and order that the *Anderson* burden-shifting framework applies in this case, along with all other relief just and appropriate in the circumstances.

## COUNT III
## VIOLATIONS OF THE NORTH CAROLINA WAGE AND HOUR ACT, N.C. GEN. STAT. 95-25.1, *et seq.*

120.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

121.    At all times relevant to the action, Defendant was an employer covered by the overtime mandates of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen Stat. §§ 95-25.1, *et seq.*, and Plaintiff and the Rule 23 North Carolina Class employees are employees entitled to the NCWHA's protections.

122.    The NCWHA entitles employees to compensation for every hour worked in a workweek.  *See* N.C.G.S. § 95-25.3.

123.    The NCWHA entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in excess of 40 hours per week."  *See* N.C.G.S.A. § 95-25.4.

124.    Defendant, Plaintiff, and the Rule 23 North Carolina Class members are "employers" and "employees" for the purposes of the NCWHA.

125.    Defendant violated the NCWHA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 North Carolina Class for the time spent on the work activities described in this Complaint.

126.    As a result, Plaintiff and the Rule 23 North Carolina Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 North Carolina Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the NCWHA at an amount to be proven at trial.  *See* N.C.G.S.A. § 95-25.22.

## COUNT IV
## BREACH OF CONTRACT

127.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

128.    Defendant had binding and valid contracts with Plaintiff and the CSRs to pay for each hour worked at a pre-established (contractual) regular hourly rate in

consideration of the work duties Plaintiff and the CSRs performed on behalf of Defendant.

129.   Plaintiff and the CSRs earned pre-established hourly rates in excess of $15 per hour.

130.   Plaintiff and the CSRs accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre- and mid-shift work activities, described herein.

131.   By not paying Plaintiff and the CSRs the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiff and the CSRs.

132.   Plaintiff's and the CSRs' remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the CSRs more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

133.   Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff spent performing off-the-clock activities.

134.   As a direct and proximate result of Defendant's contractual breach, Plaintiff was damaged in an amount to be determined at trial.

## COUNT V
## UNJUST ENRICHMENT/QUANTUM MERUIT

135.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

136.   Plaintiff and Defendant made binding and valid agreements whereby Defendant was obligated to pay Plaintiff and the CSRs for each hour worked at a pre-established hourly rate in consideration for the work Plaintiff and the CSRs performed for Defendant.

137.   Plaintiff and the CSRs accepted the terms of Defendant's promises under the agreement by performing their duties each shift including the unpaid work activities described herein.

138.   Defendant accepted and retained the benefits conferred upon them by Plaintiff and the CSRs.

139.   By not paying Plaintiff and the CSRs the agreed upon hourly wage (*i.e.*, the value of services) for all work performed, Defendant was unjustly enriched.

140.   Plaintiff's and the CSRs' remedies under the FLSA may be inadequate to the extent Defendant paid more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, a pure "gap time" claim).

141.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff and the CSRs are entitled to damages equal to the amount Defendant was unjustly enriched at Plaintiff's and the CSRs' expense, plus an award of pre- and post-judgment interest at the applicable legal rate.

## <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff requests the following relief:

a.   Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Counts I and II);

b.   Certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claim (Count III);

c.   Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts IV and V);

d.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and contact information for all proposed Collective members, and authorizing Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

e.   Designating Plaintiff as the representative of the FLSA Collective action, the Rule 23 North Carolina Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class/Collective counsel for the same;

f.   Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.   Declaring Defendant's violations of the FLSA were willful;

h.   Declaring Defendant breached its contracts with Plaintiff failing to pay Plaintiff for each hour they worked at a pre-established (contractual) hourly rate;

i.   Declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-

clock work discussed herein;

j.      Granting judgment in favor of Plaintiff and the proposed Collective members and against Defendant and awarding Plaintiff and the proposed Collective members, the Rule 23 North Carolina Class, and the Rule 23 Nationwide Class, the full amount of damages and liquidated damages available by law;

k.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

l.      Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, Eionshafae Evans, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: January 9, 2024          Respectfully Submitted,

By: /s/ Andrew Weiner

      Jeffrey B. Sand
      Georgia Bar No. 181568
      Andrew L. Weiner
      Georgia Bar No. 808278
      WEINER & SAND LLC
      800 Battery Avenue SE
      Suite 100
      Atlanta, GA  30339
      (404) 205-5029 (Tel.)
      (404) 254-0842 (Tel.)
      (866) 800-1482 (Fax)
      js@wsjustice.com

aw@wsjustice.com

*-and-*

Jason J. Thompson (P47184)*
Paulina R. Kennedy (P84790)*
Sommers Schwartz, P.C.
141 E. Michigan Avenue, Suite 600
Kalamazoo, MI 49007
(269) 250-7501
jthompson@sommerspc.com
pkennedy@sommerspc.com
*pro hac vice motions forthcoming*

*Attorneys for Plaintiffs*